641 So.2d 1100 (1994)
Jack Thomas CROWE
v.
Shirley Scott CROWE.
No. 91-CA-0553.
Supreme Court of Mississippi.
August 4, 1994.
*1101 Gregory D. Keenum, Booneville, for appellant.
Jak M. Smith, Tupelo, for appellee.
Before DAN M. LEE, P.J., and McRAE and SMITH, JJ.
DAN M. LEE, Presiding Justice for the Court:
This appeal challenges certain provisions of a final divorce decree entered on May 2, 1991. Jack Crowe initially filed a complaint for divorce on the ground of habitual cruel and inhuman treatment. Shirley Crowe responded by filing a counter-complaint on the same ground and Mr. Crowe did not contest her complaint. Shirley was granted a divorce on the ground of habitual cruel and inhuman treatment. She was granted lump sum and periodic alimony and the right to have her automobile and the jointly owned home in her exclusive possession repaired at Jack's expense. Additionally, Jack was ordered to refrain from altering Shirley's status as the recipient of survivor benefits under his pension contract.
Jack did not contest the granting of the divorce below, nor does he challenge it on appeal. He has, however, duly perfected his appeal with respect to the following assignments of error:
I. The trial court erred in setting the amount of alimony of a 10-year marriage at $300.00 from the Appellant's retirement earnings.
II. The trial court erred in granting lump sum alimony in addition to periodic alimony without any basis on the record that the Appellant had the ability to pay such award and that the parties have disparate estates and without it being included in the pleadings.
III. The trial court erred in ordering the Appellant to be responsible for repairs to be made on the automobile granted to the Appellee, as this was not embraced by the pleadings and should not have been properly before the court.
IV. The trial court erred in ordering the Appellant to pay for any repair costs which the Appellee spent on the jointly-owned property and it further improperly imposed liens against the Appellant's interest in the home.
V. The trial court erred in enjoining the Appellant from changing the death beneficiary of his pension plan to anyone other than the Appellee.
VI. The trial court erred in requiring the Appellant to pay attorney's fees for Appellee's attorney in this action.
We find no error and affirm the judgment of the lower court on Assignments I, II, III, IV, and VI. The lower court erred, however, in granting an interest in Jack's pension to Shirley without making the requisite findings of fact required by our case law. Accordingly, we reverse the lower court on Assignment V, and remand for a proper determination of Shirley's rights with respect to Jack's pension.

STATEMENT OF THE FACTS
Jack Thomas Crowe and Shirley Scott Crowe were married in 1980, and thereafter resided in Lee County until their separation in 1990. Jack was 55 and Shirley was 45 when they wed. Jack worked as a truck driver for Roadway. Shirley was unable to work for medical reasons. After the wedding, both engaged in buying and selling various items in what they referred to as the "junking" business. Jack Crowe retired from Roadway in 1985, but he continued his *1102 other business ventures, including the junking business.
Neither party brought significant assets into the marriage. Jack had some equity in the house where the couple lived and a small amount of cash. However, substantial assets were accumulated during the union apparently through the efforts of both the parties. First, the Crowes were able to retire the mortgage on their home, referred to as the "North Thomas Street house." Jack deeded the home to both of them as joint tenants. The value of the North Thomas Street House was estimated by Mr. Crowe to be around $65,000.00. The couple also acquired two rental houses during the marriage. The first was located in Saltillo, and was paid for in full with a check for $32,500.00. It was appraised at $37,000.00 in anticipation of the trial. The second, in Tupelo, was appraised at $33,500.00 and was encumbered with a mortgage requiring payments of $251.00 per month. Jack and Shirley were also able to save large amounts of cash which they apparently kept hidden from each other in the North Thomas Street house. Jack testified that he found about $20,000.00 in cash in Shirley's bathroom in November of 1989. Shirley disputed the amount and countered with testimony that she had found and counted $30,000.00 that Jack kept on the premises. Both denied hiding money, claiming instead that the other had full knowledge of the cash.
Around the time that the couple separated, Jack withdrew $10,000.00 from their joint bank account and Shirley withdrew the remaining $5,000.00. Apparently, this money was separate from and in addition to the cash on hand at the house.
At the time of the trial, Jack Crowe was receiving $765.00 each month as a pension and $648.00 per month from Social Security, for a total of $1413.00 per month. Shirley Crowe was drawing $525.00 per month in Social Security disability benefits. There was disputed testimony as to whether Jack would continue to have income from the "junking" business.
The chancellor held that all the real property was jointly owned by Jack and Shirley. He awarded sole possession of the Thomas Street house to Shirley and exclusive possession of the other two houses was given to Jack. Jack was charged with paying for necessary repairs on the home and automobile used by Shirley. Shirley was awarded $4,500.00 in lump sum alimony and $300.00 per month in periodic alimony. Jack was also enjoined from changing his pension arrangement which designated Shirley as the recipient of survivor benefits, and he was ordered to pay Shirley's attorney's fees.
On appeal, Jack Crowe challenges the alimony awards, the award of repair expenses, the order to refrain from changing his pension arrangement, and the award of attorney's fees.

I. The trial court erred in setting the amount of alimony of a 10-year marriage at $300.00 from the Appellant's retirement earnings.
This Court's standard of review is limited in domestic relations cases where the chancery court has decided upon terms of alimony. In such cases the award will not be altered on appeal unless it is found to be against the overwhelming weight of the evidence or manifestly in error. Tilley v. Tilley, 610 So.2d 348 (Miss. 1992); McNally v. McNally, 516 So.2d 499, 501 (Miss. 1987); Harrell v. Harrell, 231 So.2d 793 (Miss. 1970).
This Court considers several factors in evaluating an award of periodic alimony. These factors include: (1) the health and earning capacity of the husband, (2) the health and earning capacity of the wife, (3) the reasonable needs of the wife, (4) the husband's necessary living expenses, and (5) other factors such as estimated amount of income taxes, the use of the family home or automobile, and the payment of insurance. Monroe v. Monroe, 612 So.2d 353 (Miss. 1992); Boykin v. Boykin, 565 So.2d 1109, 1111 (Miss. 1990); McNally v. McNally, 516 So.2d 499, 501 (Miss. 1987); Skinner v. Skinner, 509 So.2d 867, 868 (Miss. 1987); Brabham v. Brabham, 226 Miss. 165, 84 So.2d 147 (1955). Both parties are entitled to a "decent standard of living," whenever possible. Monroe, 612 So.2d at 357; Gray v. Gray, 562 So.2d 79, 83 (Miss. 1990).
*1103 At the time of trial, Jack Crowe was retired and in his late sixties. Shirley Crowe was in her late fifties and permanently disabled. Neither party had extensive earning capacity, although Jack apparently continued to realize some additional revenue from his junk business.
Shirley testified that her monthly expenses were about $1111.71 and her monthly income was $525.00. Jack testified to monthly income of $1413.00 and expenses of approximately $1121.00. The award of $300.00 per month is not at odds with the reasonable needs demonstrated by the parties.
As for other factors, there are none that support the conclusion that the chancellor erred in awarding the periodic alimony. Income taxes are minimal. Both parties were awarded exclusive use of an unencumbered home[1] and at least one automobile. Jack was ordered to pay taxes and insurance on all three jointly owned parcels for a period of two years.
Viewing this award in light of the facts discussed above and the relevant considerations established by prior cases, the chancellor committed no manifest error in determining the amount of periodic alimony. Accordingly, this assignment of error is without merit.

II. The trial court erred in granting lump sum alimony in the amount of $4500.00 in addition to periodic alimony without any basis on the record that the Appellant had the ability to pay such award and that the parties have disparate estates and without it being included in the pleadings.
In a proper case, the chancellor can award alimony payable in one lump sum or periodic alimony, payable monthly, or both, dependent upon the circumstances of the parties. Tilley v. Tilley, 610 So.2d 348 (Miss. 1992); Miller v. Miller, 173 Miss. 44, 159 So. 112 (1935).
The factors to be considered are: (1) the existence of substantial contributions to the accumulation of wealth of the payor either by quitting a job to become a housewife or by assisting in the payor's business, (2) the length of the marriage, (3) the lack of separate income or the existence of comparatively meager income for the recipient, and, (4) lack of financial security in the absence of an award. See Tilley v. Tilley, 610 So.2d 348 (Miss. 1992); Retzer v. Retzer, 578 So.2d 580, 592 (Miss. 1990); Cheatham v. Cheatham, 537 So.2d 435, 438 (Miss. 1988).
In the present case, there was contradicting testimony as to the extent of Shirley's assistance in the "junking" business. She did assist in the business to some extent. Exhibits consisting of sales receipts in Shirley's handwriting support the conclusion that she participated in the business. As for the next factor, the marriage lasted roughly ten years. Neither party has enviable separate income or financial security. Jack receives $1413.00 per month as compared to Shirley's $525.00. Jack was able to obtain $10,000.00 from the couples' joint checking account as compared to $5000.00 removed by Shirley. Finally, Jack was awarded sole ownership of two vehicles used during the marriage whereas Shirley received only one.
In light of the facts of this case and the appropriate legal considerations, the chancellor committed no manifest error in awarding $4500.00 in lump sum alimony to Shirley.
Beyond the amount of the lump sum alimony, Jack Crowe also challenges the award as beyond the scope of the pleadings. Shirley's complaint asked for the following:
1. A reasonable sum to be paid periodically by the Counter-defendant as permanent support and maintenance for Counter-plaintiff;
11. Counter-plaintiff prays for such other relief as to the Court may seem right and proper and as in duty bound will ever pray.
"Mississippi divorce actions are governed by the divorce and alimony provisions of section 93, chapter 5 of the Mississippi Code." Rawson v. Buta, 609 So.2d 426, 430 (Miss. 1992). The procedural provisions of the Mississippi Rules of Civil Procedure are *1104 only applicable when this statute is silent. Id. However, where the issue is the sufficiency of the pleadings to support a specific award, the general rules of pleading govern as there is no inconsistent statutory provision. Smith v. Smith, 607 So.2d 122, 127 (Miss. 1992).
"The purpose of Rule 8 is to give notice, not to state facts and narrow the issues as was the purpose of pleadings in prior Mississippi practice." Comment, M.R.C.P. 8. "The rule allows the claims to be stated in general terms so that the rights of the client are not lost by poor drafting skills of counsel." Id. Furthermore, "under the general prayer, any relief will be granted which the original bill justifies and which is established by the main facts of the case, so long as the relief granted `will not cause surprise or prejudice to the defendant.'" Smith v. Smith, 607 So.2d 122, 127 (Miss. 1992).
In this case, the complaint does not specifically ask for lump sum or periodic alimony. Instead it asks for permanent support and maintenance and other general relief. However, Jack could not reasonably be said to have been surprised by the chancellor's award of alimony in a divorce action. As this Court has recently stated:
It is the duty of the court, regardless of the pleadings of the parties, to fully inquire into the facts and circumstances of each case and to act accordingly.
Rawson v. Buta, 609 So.2d 426, 430 (Miss. 1992).
For the foregoing reasons, this assignment of error is without merit.

III. The trial court erred in ordering the Appellant to be responsible for repairs to be made on the automobile granted to the Appellee, as this was not embraced by the pleadings and should not have been properly before the court.

IV. The trial court erred in ordering the Appellant to pay for any repair costs which the Appellee spent on the jointly-owned property and it further improperly imposed liens against the Appellant's interest in the home.
Again, Jack was not unfairly surprised by either of these issues. These assignments of error are without merit.

V. The trial court erred in enjoining the Appellant from changing the death beneficiary of his pension plan to anyone other than the Appellee.
Despite the fact that Jack and Shirley were married only during the final five years of Jack's lengthy career in the freight business, the chancellor ordered Jack Crowe to refrain from removing Shirley as the recipient of the survivor benefit under his pension. Thus, under the lower court's decree, if Shirley outlives Jack she would receive approximately $332.00 per month for the remainder of her life.
Jack argues that the injunction violates the cardinal rule that the periodic alimony ends with the death of the payor. See e.g., Bowe v. Bowe, 557 So.2d 793, 794 (Miss. 1990). He offers no authority for the proposition that the property right granted is periodic alimony.
Shirley argues, also without authority, that the interest granted is lump sum alimony, representing a division of the vested property rights of both parties to the pension proceeds.
Both parties misapprehend the true nature of the award granted below. Although the benefit amount Shirley would receive after Jack's death is roughly equivalent to the periodic award she would receive during his life, it is apparent that the lower court in fact effected a division of the property rights in the pension money. The record does not show the terms of Jack's pension contract, and we are thus unable to determine whether he would be able to realize some present economic benefit from removing his ex-wife as survivor beneficiary. Jack felt that he would receive an additional $132 per month if he were allowed to remove Shirley as survivor beneficiary. At any rate, the chancellor made no finding supporting his apportionment of the fund, and our case law does not allow for an "automatic" division of pension property between divorcing spouses. Accordingly, the lower court's ruling must be reversed on this issue and the matter remanded for a determination based on appropriate findings.
*1105 "We have long recognized that, incident to a divorce, the Chancery Court has authority, where the equities so suggest, to order a fair division of property accumulated through the joint contributions and efforts of the parties." Brown v. Brown, 574 So.2d 688, 690 (Miss. 1990). See Brendel v. Brendel, 566 So.2d 1269, 1273 (Miss. 1990); Jones v. Jones, 532 So.2d 574, 580-81 (Miss. 1988); Regan v. Regan, 507 So.2d 54, 56 (Miss. 1987); Watts v. Watts, 466 So.2d 889, 891 (Miss. 1985); Clark v. Clark, 293 So.2d 447, 450 (Miss. 1974). Furthermore, only "[a] spouse who has made a material contribution toward the acquisition of an asset titled in the name of the other may claim an equitable interest in such jointly accumulated property." Jones v. Jones, 532 So.2d 574, 581 (Miss. 1988) (emphasis added).
In this particular case the lower court made no findings that Shirley contributed to the accumulation of the funds in the pension plan. To grant Shirley an interest in her husband's pension in the absence of such findings was error. Accordingly, we reverse and remand for a proper determination of the parties' rights with respect to the pension fund. See Ferguson v. Ferguson, 639 So.2d 921 (Miss. 1994).

VI. The trial court erred in requiring the Appellant to pay attorney's fees for Appellee's attorney in this action.
The chancellor awarded Shirley Crowe attorney's fees in the amount of $1,425.00. The legal rules applicable to such awards in divorce actions are as follows:
[T]he determination of attorney's fees is largely within the sound discretion of the chancellor. Martin v. Martin, 566 So.2d 704 (Miss. 1990); Devereaux v. Devereaux, 493 So.2d 1310 (Miss. 1986); Kergosien v. Kergosien, 471 So.2d 1206 (Miss. 1985). We are "reluctant to disturb a chancellor's discretionary determination whether or not to award attorney fees and of the amount of [any] award." Geiger v. Geiger, 530 So.2d 185, 187 (Miss. 1988).
We follow the general rule that where "a party is financially able to pay her attorney, an award of attorney's fees is not appropriate." Martin v. Martin, supra, 566 So.2d at 704; Carpenter v. Carpenter, 519 So.2d 891 (Miss. 1988); Harrell v. Harrell, 231 So.2d 793 (Miss. 1970). In Cheatham v. Cheatham, 537 So.2d 435 (Miss. 1988), we held that the chancellor abused his discretion in awarding attorney's fees where there was insufficient evidence in the record to establish the wife's inability to pay.
Smith v. Smith, 614 So.2d 394, 398 (Miss. 1993).
In the present case Jack Crowe asserts that there was insufficient evidence in the record to support the chancellor's conclusion that Shirley was unable to pay her attorney. However, the chancellor did have testimony and exhibits tending to show Shirley's monthly income ($525) and expenses ($1100.00), as well as her cash on hand. Under these circumstances he did not abuse his discretion in awarding fees.

CONCLUSION
After careful review, we are of the opinion that the Assignments I, II, III, IV, and VI set out above are without merit. The learned chancellor committed no error in deciding these issues. However, it was error for the lower court to award Shirley a portion of Jack's pension without proper findings in support of such a ruling. Accordingly, that portion of the lower court's judgment that purports to enjoin Jack Crowe from altering his survivor beneficiary is reversed and remanded for a proper determination of the parties' respective interests in the pension fund. All other aspects of the chancellor's decision are affirmed.
AFFIRMED IN PART AND REVERSED AND REMANDED IN PART FOR PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION.
SULLIVAN, PITTMAN, McRAE, JAMES L. ROBERTS, Jr. and SMITH, JJ., concur.
PRATHER, P.J., concurs in part and dissents as to part V. with separate written opinion joined by HAWKINS, C.J., and BANKS, J.
PRATHER, Presiding Justice, concurring in part, dissenting in part:
I write separately to express my concurrence in part and dissent in part to the *1106 majority opinion. In my view, the chancellor, as the fact finder, was supported in the record in his decision. I find no evidence indicating he was manifestly in error.
As to the award of periodic and lump sum alimony, I concur with the majority opinion. However, I dissent as to the majority opinion's holding regarding the pension plan. I disagree with the premise of the majority that Shirley must have made monetary contribution to Jack's pension plan in order to receive any benefits therefrom.
This Court has recognized that "contributions" to support an award of lump sum alimony may be in the nature of "in-kind" services. Jones v. Jones, 532 So.2d 574, 580 (Miss. 1988). Cf. Tedford v. Dempsey, 437 So.2d 410, 422 (Miss. 1983); Jenkins v. Jenkins, 278 So.2d 446, 449 (Miss. 1973). This Court has instructed that an award of lump sum alimony may be made from marital assets, without regard to whether the payee spouse has made a monetary contribution toward acquisition of such assets. White v. White, 557 So.2d 480, 485 (Miss. 1989). Additionally, we have defined a military retirement benefit as a marital asset to be considered in the division of marital property. Powers v. Powers, 465 So.2d 1036, 1037 (Miss. 1985). See also Southern v. Glenn, 568 So.2d 281, 283-84 n. 1 (Miss. 1990).
The record does support the fact that while Jack was making contributions to his pension plan, Shirley lived with him and the couple worked together to accumulate marital assets. I find no manifest error in the chancellor's considering the pension plan as a marital asset subject to equitable division. However, I would concur with a remand as to that feature of the award to evaluate the award in light of the guidelines for division of future interests contained in our recent decisions in Parker v. Parker, 641 So.2d 1133, decided August 4, 1994, and Ferguson v. Ferguson, 639 So.2d 921 (Miss. 1994).
HAWKINS, C.J., and BANKS, J., join this opinion.
NOTES
[1] Although Mr. Crowe's brief indicates that the Saltillo home awarded to him was destroyed by a tornado in 1992, this has no bearing on the propriety of the original decree.